UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **TECHOTA LLC,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:18-cv-00317-RDP |
| } | |
| **CP HOME CARE VANCE LLC, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on CP Home Care Vance, LLC's Motion to Strike First Amended Complaint (Doc. # 6), Plaintiff's Motion to Remand (Doc. # 20), and Defendants' Motion to Strike Affidavit of Veronica Wilkerson-Fountain (Doc. # 28). A Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 1-1 at p. 79), three Motions to Dismiss (Docs. # 7, 8, 22), and a Motion to Strike Plaintiff's Jury Demand (Doc. # 11) are also pending before the court. For the reasons outlined below, the court concludes that this case is not properly before this court and is due to be remanded.

**I. Background**

    **A. Procedural History**

On February 2, 2018, Plaintiff Techota LLC ("Plaintiff" or "Techota") filed a complaint in the Circuit Court of Tuscaloosa County, Alabama, against CP Home Care Vance, LLC ("CP Home Care"), Parcim US (AL) LLC ("Pacrim AL"), and Parcim U.S. L.L.C. ("Pacrim US" and collectively with Pacrim AL, the "Pacrim Defendants"), alleging (1) breach of contract, (2) rescissions for breach of contract, (3) promissory fraud, (4) suppression, (5) rescission for fraud, and (6) unjust enrichment. (Doc. # 1-1 at p. 3-13). The Complaint also sought an injunction against CP Home Care. (*Id.* at p. 12). On February 23, 2018, Techota filed its First Amended

Complaint which added Von Hales ("Hales") and Amory Scarbrough ("Scarbrough") as defendants in the action, sought a second injunction, and added additional claims of conversion and tortious interference with business and contractual relations. (*Id.* at p. 55-71). The First Amended Complaint alleges that, since the commencement of this litigation, CP Home Care, Hales, and Scarbrough have taken wanton and intentional acts to retaliate against Plaintiff for filing this lawsuit. (*Id.* at p. 58). On February 27, 2018, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (*Id.* at p. 79-82), a brief in support of the motion (*Id.* at p. 83-98), and exhibits in support of the motion (Docs. 1-1 at p. 98- 204; 1-2; 1-3 at p. 1-37). On the same day, Defendants CP Home Care, Pacrim AL, and Pacrim US removed this action to federal court. (Doc. # 1). The filings were just starting.

On March 6, 2018, the flurry really began: CP Home Care filed a Motion to Strike First Amended Complaint (Doc. # 6); the Pacrim Defendants filed a Motion to Dismiss (Doc. # 7); CP Home Care filed a Motion to Dismiss Count VII of Plaintiff's Complaint (Doc. # 8); CP Home Care filed a Counterclaim against Techota, Phyllis J. Robertson ("Robertson"), Shannon Hendon ("Hendon"), Veronica Wilkerson-Fountain ("Wilkerson-Fountain"), and Jeff Bauer ("Bauer" and collectively the "Counter Defendants") (Doc. # 9); and CP Home Care filed an answer to Plaintiff's Complaint (Doc. # 10). On March 7, 2018, CP Home Care filed a Motion to Strike Plaintiff's Jury Demand. (Doc. # 11).

This case was reassigned to the undersigned on March 8, 2018. (Doc. # 13). The court held a hearing on this case on March 12, 2018. (Doc. # 14). Following the March 12, 2018 hearing, Plaintiff filed a Motion to Remand (Doc. # 20) on March 21, 2018, and a Motion to Dismiss Counterclaims (Doc. # 22) on March 27, 2018. The Motion to Remand has been fully briefed. (Docs. # 20, 21, 29, 31). On April 4, 2018, CP Home Care and the Pacrim Defendants

moved to strike the Affidavit of Wilkerson-Fountain (Doc. # 21-1) from Plaintiff's Motion to Remand. (Doc. # 28).

B.   **Parties' Citizenships**

Defendants CP Home Care, Pacrim AL, and Pacrim US removed this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. # 1 at p. 1). They allege that this case is properly removed under § 1441 because this court has original jurisdiction under § 1332(a). (*Id.* at ¶¶ 6-7). Section 1332(a) establishes federal jurisdiction for diverse actions "where the matter in controversy exceeds the sum or value of $75,000." Count 1 of both the original Complaint and the First Amended Complaint claim that CP Home Care breached a contract by failing to make a payment of $674,000. (Doc. # 1-1 at p. 4, 61). Therefore, the requisite amount-in-controversy for diversity jurisdiction is met. *See* 28 U.S.C. § 1332(a).

Removal based on diversity jurisdiction also requires "complete diversity between all named plaintiffs and all named defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). Techota is an Alabama limited liability company ("LLC"). (Doc. # 1-1 at p. 3, 55). An LLC "is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

The structure of the entities involved in this case is the stuff from which corporate lawyers' dreams are made. Techota has three members: Cahaba Valley Health Services, Inc. ("Cahaba Valley"), Bibb County Health Care Authority d/b/a Bibb Medical Center ("Bibb Medical Center"), and Rubicon Research, Inc. ("Rubicon"). (Doc. # 1 at ¶ 10). Cahaba Valley and Bibb Medical Center are both citizens of Alabama, and Rubicon is a citizen of Tennessee.[1]

---

[1] Cahaba Valley is an Alabama corporation with its principal place of business in Centreville, Alabama. (Doc. # 1 at ¶ 11). Bibb Medical Center is an Alabama non-profit corporation with its principal place of business in Centreville, Alabama. (*Id.* at ¶ 13). Rubicon is a Tennessee corporation with its principal place of business in Nashville, Tennessee. (*Id.* at ¶ 14).

(*Id.* at ¶¶ 11-15). Accordingly, Plaintiff is a citizen of both Alabama and Tennessee. *See Rolling Greens MHP, L.P.*, 374 F.3d at 1022.

Defendants CP Home Care, Pacrim AL, and Pacrim US are all LLCs. (*Id.* at ¶ 16). Pacrim US is the sole member of Pacrim AL. (*Id.* at ¶ 17). Pacrim US and CP Home Care have the same single member, CP Holdings LLC. (*Id.* at ¶ 18). The sole member of CP Holdings LLC is PCII Holding LLC, and Pacrim Capital International Inc. is the only member of PCII Holdings LLC. (*Id.* at ¶¶ 19-20). Pacrim Capital International Inc. is a Bahamian corporation with a principal place of business in Hong Kong; therefore, Defendants CP Home Care, Pacrim AL, and Pacrim US are all citizens of foreign states. (*Id.* at ¶¶ 22-23). (Note: This is not a third-year Federal Jurisdiction final exam).

Defendant Hales and Defendant Scarbrough are both citizens of Alabama and employees of CP Home Care. (Doc. # 1-1 at p. 56). Hales is the Administrator for CP Home Care. (*Id.*). Scarbrough is a Supply Coordinator for CP Home Care. (*Id.*).

Counter Defendants Robertson, Hendon, Wilkerson-Fountain, and Bauer are all former employees of CP Home Care, whose employments were terminated on February 7, 2018. (Doc. # 9 at ¶¶ 3-6). Robertson, Hendon, and Bauer own Rubicon and are all citizens of Tennessee. (*Id.* at ¶¶ 2, 3-5). Wilkerson-Fountain is a citizen of Alabama. (*Id.* at ¶ 6).

## II.     Motion to Remand Standard of Review

It has long been recognized that federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Indeed, federal courts may only exercise jurisdiction conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Anytime a "federal court acts outside its statutory subject matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Univ. of S. Ala. v. Am.*

4

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971)).

Generally, any action filed in state court, over which a district court would have original jurisdiction, "may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction for the purpose of a valid removal to this court is squarely on the removing party. *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). Federal courts strictly construe removal statutes and resolve all doubts in favor of remand. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006).

## II.     Discussion

On the face of the First Amended Complaint, diversity jurisdiction does not exist here because Plaintiff Techota, Defendant Hales, and Defendant Scarbrough are all Alabama citizens. This destroys complete diversity. *See Lincoln Prop. Co.*, 546 U.S. at 84. CP Home Care and the Pacrim Defendants argue that the citizenships of Hales and Scarbrough should be ignored for the purpose of evaluating complete diversity because (1) First Amended Complaint has no legal effect and (2) Hales and Scarbrough were fraudulently joined to this action. (Doc. # 1 at ¶ 25). The court explores each of these arguments, in turn.

### A.     Contrary to Defendants' Position, the First Amended Complaint Is the Operative Complaint

A complaint is "supplemented" under Rules 15(d) of the Federal Rules of Civil Procedure and of the Alabama Rules of Civil Procedure [2] if it involves a transaction, occurrence, or event that happened after the filing of the complaint. *See Harris v. Garner*, 216 F.3d 970, 988

---

[2] The Alabama Supreme Court has noted that "Rule 15(d), Fed.R.Civ.P., is identical to Rule 15(d), Ala. R. Civ. P." *Ex parte Jefferson Smurfit Corp. (U.S.)*, 951 So. 2d 659, 666 (Ala. 2006).

n.6 (11th Cir. 2000); *see also* Fed. R. Civ. P. 15(d); Ala. R. Civ. P. 15(d). "Only prior events are properly treated as amendments under Rule 15(a)." *See Harris*, 216 F.3d at 988 n.6. Here, when Plaintiff amended its complaint to include events that occurred after the date of the filing of the Complaint, Plaintiff filed a supplemented pleading, rather than an amended complaint. (Doc. # 1-1 p. 58). Accordingly, Plaintiff was required to follow the procedure provided in Rule 15(d). That is, before supplementing its Complaint, it should have first filed a motion requesting leave to file its supplemental pleading before doing so. *See* Ala. R. Civ. P. 15(d). CP Home Care and the Pacrim Defendants argue that Plaintiff's First Amended Complaint is "a nullity with no legal effect" because Plaintiff did not first file such a motion or otherwise seek leave before filing its First Amended Complaint. (Docs. # 1 at ¶¶ 27-28; 6 at ¶¶ 6, 14-15; 29 at p. 4-10).

In *Image Marketing, Inc. v. Florence Television, L.L.C.*, the Alabama Supreme Court held that an amended complaint was a nullity without legal effect because the plaintiff had failed to seek leave, as required under Rule 15, before filing the amended complaint. 884 So. 2d 822 (Ala. 2003). The facts of *Image Marketing* are -- to say the least -- distinguishable from the case before this court. There, the plaintiff filed a *third* amended complaint without leave of the court *nearly three years* after the filing of the plaintiff's initial complaint. *See* 884 So. 2d at 823. Here, Plaintiff's First Amended Complaint was filed a mere twenty-one days after Plaintiff's initial filing of its Complaint. (*See* Doc. # 1-1). Defendants had not answered or otherwise responded to Plaintiff's Complaint when Plaintiff filed its First Amended Complaint. (*See id.*). Furthermore, in *Image Marketing*, the Alabama Supreme Court explained that not all improperly served pleadings are to be considered nullities. *Image Mktg., Inc.*, 884 So. 2d at 826. More specifically, citing the Eleventh Circuit[3] in *Hoover v. Blue Cross & Blue Shield of Alabama*, 855

---

[3] The Alabama Supreme Court stated that "since the Alabama Rules of Civil Procedure are modeled on the Federal Rules of Civil Procedure, federal decisions are highly persuasive when we are called upon to construe the Alabama

6

F.2d 1538 (11th Cir. 1988), the Alabama Supreme Court noted that an "untimely amended pleading served without judicial permission *may be considered as properly introduced when leave to amend would have been granted had it been sought*." *Id.* (internal quotations omitted) (emphasis added); *see also Ex parte Jefferson Smurfit Corporation (U.S.)*, 951 So. 2d 659, 668 (Ala. 2006) ("[The Alabama Supreme Court] noted in *Image Marketing* . . . that a supplemental pleading filed without leave of court may be given effect if leave would have been granted.").

The court is more persuaded by *Ex parte Jefferson Smurfit Corporation (U.S.)*. There, the Alabama Supreme Court reversed a dismissal that was partially based on a party not properly following the Rule 15(d) procedure in filing a supplemental pleading. *See Ex parte Jefferson Smurfit Corp. (U.S.)*, 951 So. 2d 659. As the court explained:

> '[T]he distinction between amended and supplemental pleadings is sometimes ignored completely. . . .' Although a supplemental pleading always requires leave of court to file, whereas an amended pleading sometimes does not, the effect of that difference is often of little consequence: '[The difference] is that certain amendments may be made as a matter of course within stated time periods, whereas all supplemental pleadings require leave of court. But even if a supplemental pleading is interposed by a party without leave of court in the mistaken belief it is a Rule 15(a) amendment that may be made as a matter of course, **it is doubtful that any prejudice would accrue to the opposing party because the time during which amendments as of right may be filed is relatively short and comes early in the action so that prejudice to any other party is unlikely**.' . . . [T]he concern is the actual prejudice to the adverse party in allowing the supplemental pleading.

*Id.* at 667 (quoting 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1504 (1990)) (emphasis added).

---

Rules." *Image Mktg., Inc.*, 884 So. 2d at 825 (quoting *Assured Investors Life Ins. Co. v. Nat'l Union Assoc., Inc.*, 362 So. 2d 228 (Ala. 1978) and *City of Birmingham v. City of Fairfield*, 396 So. 2d 692, 696 (Ala. 1981)) (internal quotations omitted).

In this instance, the supplemental pleading was filed twenty-one days after Plaintiff's original Complaint. (*See* Doc. # 1-1). It is clear to the court that if Plaintiff had sought leave from the Tuscaloosa Circuit Court to supplement its Complaint, such leave would have been granted as Defendants would not in any way have been prejudiced by Plaintiff filing its First Amended Complaint.[4] *See Ex parte Jefferson Smurfit Corp. (U.S.)*, 951 So. 2d at 668 n. 20 (noting that, if the plaintiff "had moved the trial court for leave to supplement, the trial court should have granted that motion"); *cf. Barnes v. Dale*, 530 So. 2d 770, 777 (Ala. 1988) ("[F]ormality is subordinate to the substantive interests of the parties."). As such, the court finds that, because "leave to amend would have been granted had it been sought," Plaintiff's First Amended Complaint is "considered properly introduced" and the operative pleading for the court to consider for the purposes of subject matter jurisdiction. *Image Mktg., Inc.*, 884 So. 2d at 826.

B. **The Affidavit of Wilkerson-Fountain Is Not Properly Before the Court and is Due to Be Stricken from the Record**

Before considering the Motion to Remand, the court first evaluates whether it should grant CP Home Care and the Pacrim Defendants' Motion to Strike Affidavit of Wilkerson-Fountain (Doc. # 28). Specifically, these defendants contend that the Affidavit (Doc. # 21-1) is inadmissible hearsay because it is based on out-of-court statements made to Wilkerson-Fountain. (Doc. # 28 at ¶ 3-4). Plaintiff counters that Wilkerson-Fountain's Affidavit should not be struck from the record because Techota has submitted it for an admissible, non-hearsay purpose and,

---

[4] CP Home Care and the Pacrim Defendants argue that they will be prejudiced if the court recognizes Plaintiff's First Amended Complaint "because they would not be able to submit arguments and evidence that would otherwise be considered by the Court when ruling on post-removal joinder" under 28 U.S.C. § 1447(e). (Doc. # 29 at p. 12). As support, they cite *Lawson v. Wal-Mart Stores East, L.P.*, No. 2:17-CV-1885-VEH, 2018 WL 684839 (N.D. Ala. Feb. 2, 2018). (*Id.* at p. 14-15). However, Plaintiff clearly joined the non-diverse individual defendants *prior to* removal, not *after* removal, making § 1447(e) inapplicable to this case. In *Lawson*, on the other hand, the plaintiff had amended the complaint to add non-diverse parties approximately one hour after the defendant had removed the case to federal court, making a § 1447(e) analysis proper. *See Lawson*, 2018 WL 684839, at *1.

8

alternatively, if the Affidavit is found to be hearsay, it can be reducible to an admissible form at trial. (Doc. # 32 at p. 2-3).

A court may consider evidentiary submissions by the parties, such as affidavits and depositions transcripts, when ruling on a fraudulent joinder claim. *Legg v. Wyeth*, 428 F.3d 1317, 1322-23 (11th Cir. 2005). The standard "'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment.'" *Id.* Therefore, the court looks to summary judgment case law to examine the admissibility of Wilkerson-Fountain's statement that a representative of St. Vincent's Home Health informed her that Scarbrough was attempting to arrange the transfer of approximately thirty patients under the care of one of the home health agencies that Plaintiff operated.

Affidavits or depositions containing conclusory statements that are not based on personal knowledge are inadmissible hearsay and are improper. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Id.* at 1323. "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence)." *Id.* at 1323-24.

Plaintiff argues that Wilkerson-Fountain's Affidavit is not hearsay because it is not being offered for the truth of the matter asserted; rather, it is being offered to show that "it has a good faith basis for asserting its claim of tortious interference" against Scarbrough. (Doc. # 32 at p. 2). Plaintiff's argument misses the mark for at least two reasons. First, Wilkerson-Fountain's sworn statement that an unnamed representative told her that Scarbrough contacted St. Vincent's

9

Home Health[5] is an out-of-court statement that is not based on personal knowledge. Because this out-of-court statement is being offered to support Plaintiff's claims that Scarbrough attempted to transfer Plaintiff's patients and made misrepresentations regarding these patients (or, for the truth of the matter asserted), it is undoubtedly hearsay. *See* Fed. R. Evid. 801(c). Having determined that the Affidavit contains inadmissible hearsay, the court next asks if this hearsay could be reduced to an admissible form. *Macuba*, 193 F.3d at 1323. Plaintiff reasons that the Affidavit would be admissible at trial if the St. Vincent's Home Health representative testified at trial regarding her alleged statements to Wilkerson-Fountain or if Scarbrough testified about her alleged statements to the St. Vincent's Home Health representative. (Doc. # 32 at p. 3). Essentially, Plaintiff is stating that if the unnamed St. Vincent's Home Health representative or Scarbrough testified, they would testify that Scarbrough made the statements contained in the Affidavit.[6] This attenuated analysis is insufficient to establish that the Affidavit could be reduced to an admissible form. *See Brandon v. GlaxoSmithKline, LLC*, No. 7:15-CV-01804-RDP, 2017 WL 2876184, at *6 (N.D. Ala. July 6, 2017).

Second, and even more importantly, in order to determine whether Plaintiff has fraudulently joined Scarbrough in this action,[7] the court examines whether there is a possibility that Plaintiff can state a valid cause of action against Scarbrough, not whether Plaintiff joined Scarbrough in "good faith." *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir.

---

[5] The court notes that the Affidavit states that Scarbrough contacted St. Vincent's Home Health generally; it does not allege that Scarbrough contacted or spoke with the unnamed representative who allegedly contacted Wilkerson-Fountain. (*See* Doc. # 21-1).

[6] Of course, the Affidavit does not indicate that Scarbrough communicated with the unnamed representative with whom Wilkerson-Fountain allegedly spoke. (*See* Doc. # 21-1).

[7] Defendants CP Home Care, Pacrim AL, and Pacrim US claim that Plaintiff's joinder of Hales and Scarbrough is fraudulent because there is no possibility that Techota can recover against them. (*See* Docs. # 1 at ¶ 32; 29 at p. 16). As explained below, they do not contend that Plaintiff has committed outright fraud or that the claims asserted against Hales and Scarbrough have no real connection to the claims against them. The standard for evaluating fraudulent joinder as asserted in this case is whether Plaintiff has stated an arguable claim under state law. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

2011). Thus, if Plaintiff is using the Affidavit of Wilkerson-Fountain to illustrate that it joined Scarbrough in good faith, then this Affidavit, whether hearsay or not, is irrelevant to the court's analysis of fraudulent joinder in this case.

Accordingly, the court finds that the Motion to Strike (Doc. # 28) is due to be granted and the Affidavit of Wilkerson-Fountain (Doc. # 21-1) is due to be struck from the record.

> C. **Defendants CP Home Care, Pacrim AL, and Pacrim US Have Not Met Their Heavy Burden of Proof for Fraudulent Joinder**

Absent an application of the fraudulent joinder doctrine to the First Amended Complaint, federal diversity jurisdiction is inappropriate because Plaintiff Techota, Defendant Hales, and Defendant Scarbrough are all Alabama citizens. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). A party seeking to remove a case on the basis of fraudulent joinder faces a heavy burden of proof. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). A defendant must establish fraudulent joinder by clear and convincing evidence. *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

A defendant can show fraudulent joinder in three circumstances. "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs*, 154 F.3d at 1287. "The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* The third is "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."[8] *Id.* Defendants CP Home Care, Pacrim AL, and Pacrim US argue that

---

[8] The first category listed is the usual one at issue when fraudulent joinder is raised. The third category of the fraudulent joinder rule was announced by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

Plaintiff's joinder of Hales and Scarbrough is fraudulent under the first ground.[9] (Docs. # 1 at ¶ 32; 29 at p. 16).

When evaluating fraudulent joinder under the first ground, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (citations omitted). That is, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Stillwell*, 663 F.3d at 1332 (citing *Triggs*, 154 F.3d at 1287). Moreover, to defeat the accusation of fraudulent joinder, "there need only be a 'reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1542 (emphasis in original) (citations omitted). When faced with a fraudulent joinder claim, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Id.*

The court's analysis of fraudulent joinder is analogous to Rule 56 review insofar as the court may consider evidentiary submissions by the parties, such as affidavits and deposition transcripts, so long as it resolves issues of fact in favor of the plaintiff. *Legg*, 428 F.3d at 1322-23; *see Bromberg v. Metro. Life Ins. Co.*, 50 F. Supp. 2d 1208, 1212 (M.D. Ala. 1999) ("In

---

Several courts have criticized *Tapscott*'s fraudulent joinder standard. *See, e.g.*, *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126-28 (E.D. Cal. 2004) (explaining that *Tapscott*'s standard engenders "more procedural complexity" in removal proceedings and noting uncertainty about whether to apply federal or state joinder rules); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851-55 (S.D. Ill. 2006) (describing *Tapscott*'s standard as "an improper expansion of the scope of federal diversity jurisdiction" and suggesting that courts "have foundered on shoals of tautology in trying to define fraudulent misjoinder"); *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (declining to adopt or reject *Tapscott*'s fraudulent joinder doctrine).

[9] Specifically, these defendants allege that "Plaintiff cannot establish a cause of action against Mr. Hales and Ms. Scarbrough because the factual allegations against Mr. Hales and Ms. Scarbrough are patently false and, even if they were not false, they do not state a claim upon which relief may be granted." (Doc. # 1 at ¶ 32).

addressing fraudulent joinder, the court may consider both affidavits and deposition excerpts."). A court may take affidavits into account in deciding the limited question of whether there is a possibility that Plaintiff has stated a cause of action against the non-diverse defendants. *Legg*, 428 F.3d at 1323. In this case, Plaintiff cites the Affidavit of Matt Sevier ("Sevier") for support of its claims against the non-diverse individual defendants. (*See* Doc. # 1-2 at p. 121-22). CP Home Care and the Pacrim Defendants cite the Affidavits of Scarbrough and Andrew Oksner ("Oksner") for the proposition that these defendants are fraudulently joined. (*See* Docs. # 29-1, 29-2). The question is whether the claims against the non-diverse defendants "have a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1332.

### 1. Plaintiff's Conversion Claim Has a Possibility of Stating a Valid Cause of Action

Conversion under Alabama law "'consists of (1) an act or omission by the defendant (2) with the intent to assert control over property (3) that belongs to the plaintiff (4) resulting in substantial interference to the plaintiff's possessory rights.'" *S.B. v. St. James Sch.*, 959 So. 2d 72, 95 (Ala. 2006) (citing *Martin v. Luckie & Forney, Inc.*, 549 So. 2d 18, 19 (Ala. 1989)). A "wrongful detention or interference with another's property" qualifies as a conversion under Alabama law. *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So. 2d 454, 460 (Ala. 1993) (quoting *Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951, 952 (Ala. 1992)). Plaintiff asserts a claim of unlawful conversion against Hales and alleges that he has "wrongfully taken medical supplies owned by Techota and ha[s] refused to relinquish possession of the property." (Doc. # 1-1 at p. 67-68). These medical supplies include catheters, colostomy bags, and wound care supplies held in a supply room that CP Home Care currently controls access to. (*Id.* at p. 59).

In support of its claim against Hales, Plaintiff offers the Affidavit of Sevier, who currently serves as the Corporate Chief Nursing Officer for Techota. (Doc. # 1-2 at p. 120-122).

13

Sevier attests that, on February 9, 2018, Hales initially refused to allow him access to medical supplies, such as glucometers and blood pressure cuffs, that belonged to Plaintiff. (*Id.* at p. 120-21). Sevier states that, although he was eventually able to obtain the necessary medical supplies, the delay caused by Hales resulted in many of Techota's nurses attending patient appointments without necessary medical supplies. (*Id.* at 121). To dispute Plaintiff's conversion claim against Hales, CP Home Care and the Pacrim Defendants have included the Affidavit of Oksner, the current President of CP Home Care. (Doc. # 29-2). Oksner attests that, although Techota and CP Home Care do not agree on the ownership of these medical supplies, CP Home Care arranged a system for Techota to pick up certain supplies for the treatment of some of Techota's patients and Hales was involved in monitoring this system. (*Id.* at ¶¶ 8-9, 11). In his affidavit, Oksner states that Hales "was acting in the line and scope of his employment when overseeing the distribution of supplies to Techota," was never personally permitted to remove medical supplies, and did not personally convert or misappropriate any supplies. (*Id.* at ¶¶ 13-15).

Citing *Alfa Mutual Insurance Company v. Veal*, 622 So. 2d 1292 (Ala. 1993), CP Home Care and the Pacrim Defendants argue that Techota's conversion claim against Hales cannot state a valid claim because Techota does not identify the supplies which were allegedly converted with enough specificity. (Doc. # 29 at p. 18-19). Although these defendants correctly assert that a claim for conversion must be based on specific property, the case they cite is distinguishable from this case as it deals with the conversion of a monetary draft and discusses the conversion of intangible property.[10] *See generally Alfa Mut. Ins. Co. v. Veal*, 622 So. 2d

---

[10] Similarly, these defendants cite *Knox v. Moskins Stores*, 241 Ala. 346, 348, 2 So. 2d 449 (1941), which involved a conversion claim of an account of $25.06. "Generally, an action will not lie for the conversion of money" because it is often not capable of identification. *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991). This case, however, does not concern money or payments; rather, it deals with tangible medical supplies.

14

1292. In this case, the court finds that Plaintiff's description of the allegedly converted medical supplies is sufficiently specific to state a valid cause of action against Hales.

Next, Defendants CP Home Care, Pacrim AL, and Pacrim US contend that Techota's conversion claim against Hales fails because Techota cannot establish that it had an immediate right to possession of the supplies. (Doc. # 29 at p. 18-19). The rightful owner of the medical supplies is in dispute in this litigation, and, without clear and convincing evidence establishing that Techota is not entitled to possession of the supplies, it is not the court's role (at this stage) to weigh the merits of which entity is presently the rightful owner. *See Crowe*, 113 F.3d at 1538 ("When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."). CP Home Care and the Pacrim Defendants also argue that the conversion claim against Hales cannot state a valid claim because Techota has failed to allege that Hales personally converted Techota's supplies. (Doc. # 29 at p. 19). However, in its First Amended Complaint, Plaintiff alleges that Mr. Hales has "wrongfully taken medical supplies owned by Techota and ha[s] refused to relinquish possession of the property." (Doc. # 1-1 at p. 67-68). Furthermore, the Affidavit of Sevier highlights Techota's basis for stating a claim of conversion against Hales based on his alleged interference with Techota's property. (*See* Doc. # 1-2 at p. 120-122). Resolving all doubts in favor of Plaintiff, the court finds that Plaintiff has established the possibility of stating a valid conversion claim against Hales. *Stillwell*, 663 F.3d at 1332.

> 2. **Plaintiff's Tortious Interference Claim Has a Possibility of Stating a Valid Cause of Action**

In its First Amended Complaint, Plaintiff asserts a claim of tortious interference with business and contractual relations against Hales and Scarbrough and alleges that Hales and Scarbrough contacted patients under Plaintiff's care and sought to have these patients transferred

to another home health agency or hospice provider. (Doc. # 1-1 at p. 68-69). To state a claim for tortious interference with business and contractual relations under Alabama law, a plaintiff must show (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) that the defendant was a stranger to the contract or business relationship (4) intentional interference by the defendant with the contract or business relation; and (5) damage to the plaintiff as a result of defendant's interference. *See White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009); *Univalor Tr., SA v. Columbia Petroleum LLC*, No. CV 1:15-00414-KD-C, 2017 WL 2303999, at *4 (S.D. Ala. May 25, 2017). "One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract." *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1157 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003).

Here, Plaintiff alleges that Hales unlawfully contacted numerous patients under the care of one of the home health agencies Plaintiff operates and inquired about the medical care they were receiving. (Doc. # 1-1 at p. 60). Additionally, Plaintiff alleges that Scarbrough contacted St. Vincent's Home Health in an attempt to arrange the transfer of approximately thirty of Plaintiff's patients and that Scarbrough misrepresented to St. Vincent's Home Health that these patients were under the care of CP Home Care. (*Id.*). After Scarbrough's attempt to transfer these patients to St. Vincent's Home Health was unsuccessful, Plaintiff claims that Scarbrough contacted hospice provider ComfortCare, misrepresented to ComfortCare that Plaintiff's patients were eligible for hospice, and attempted to persuade them to accept Plaintiff's patients. (*Id.* at p. 60-61). Plaintiff claims that Hales's and Scarbrough's efforts to contact patients under Plaintiff's care and to transfer these patients to other providers were intentional attempts to interfere with

16

Plaintiff's business and contractual relations with its patients, Medicare, and health management organizations, and that this interference has damaged Plaintiff's business operations. (*Id.* at p. 61; 68-69).

As support for their claim of fraudulent joinder, Defendants CP Home Care, Pacrim AL, and Pacrim US have presented the Affidavits of Scarbrough and Oksner. (Docs. # 29-1, 29-2). Scarbrough and Oksner state that, on or after February 8, 2018,[11] Wilkerson-Fountain and other Techota employees began authorizing the discharge of patients under the care of CP Home Care without authorization by CP Home Care. (Docs. # 29-1 at ¶¶ 13-15; 29-2 at ¶ 16). Oksner further asserts that, upon learning of these discharges and transfers, CP Home Care's employees contacted some of these patients to confirm the transfer and that they were receiving the necessary care. (*Id.* at ¶ 17). Scarbrough attests that, as of 9:11 a.m. on February 9, 2018, CP Home Care's patient census system identified that CP Home Care had thirty-seven active patients. (Doc. # 29-1 at ¶¶ 4-7, 9). She explains that, on February 9, 2018, she and Hales met with home health agencies, including St. Vincent's Home Health, to discuss the transfer of these thirty-seven patients. (Doc. # 29-1 at ¶¶ 8, 10-11).

CP Home Care and the Pacrim Defendants allege that Hales and Scarbrough could not have been strangers to Techota's patient relationships because these patients were under the care of CP Home Care as of February 9, 2018, when Hales and Scarbrough contacted the other home health agencies. (Doc. # 29 at p. 17). However, there is a question as to whether this assertion contradicts Scarbrough's and Oksner's statements that Wilkerson-Fountain and other Techota employees transferred CP Home Care patients to a Techota agency after Wilkerson-Fountain's February 7, 2018 termination from CP Home Care (or, on or after February 8, 2018). (Docs. #

---

[11] Oksner states that this transfer of patients occurred on or after February 8, 2018. (Doc. # 29-2 at ¶ 16). Scarbrough states that Wilkerson-Fountain was terminated from CP Home Care on February 7, 2018 and that this unauthorized transfer of patients occurred after her termination. (Doc. # 29-1 at ¶¶ 13-14).

29-1 at ¶¶ 13-15; 29-2 at ¶ 16). Furthermore, the Affidavit of Sevier calls into question Defendants' allegation that these patients were under the care of CP Home Care, rather than Techota, as of February 9, 2018. Sevier states that after CP Home Care terminated the employment of a number of nurses on February 7, 2018, CP Home Care lacked adequate nursing staff to care for its census of over thirty patients. (Doc. # 1-2 at p. 121). Because the health of these patients was at risk, patients selected alternative home health agencies, including an agency operated by Techota, to provide care. (*Id.* at p. 121-22). The court finds that there are conflicting statements of fact regarding whether these patients were under the care of Techota or CP Home Care as of February 9, 2018. As such, for purposes of this Motion, the court must resolve these issues of fact in favor of Plaintiff and finds CP Home Care and the Pacrim Defendants' stranger argument unavailing.[12] *See Legg*, 428 F.3d at 1322-23.

Defendants CP Home Care, Pacrim AL, and Pacrim US also argue that Plaintiff "does not allege what if any actual harm Techota suffered" from Hales's and Scarbrough's alleged tortious interference. (Doc. # 29 at p. 18). Specifically, they argue that, if Hales and Scarbrough "were unsuccessful because the providers they allegedly contacted 'declined to accept the patients'" as alleged by Techota, then Techota cannot prove any damages related to its tortious interference claim. (*Id.*) (citing Doc. 1-1 at p. 60). But actually, the First Amended Complaint alleges that "St. Vincent's Home Health declined to accept the patients," not that all of the contacted providers have declined to accept Techota's patients. (Doc. # 1-1 at p. 60). The First Amended Complaint further alleges that that Hales's and Scarbrough's past and ongoing interference is damaging Techota. (Doc. # 1-1 at p. 68). In any event, CP Home Care and the Pacrim

---

[12] To be clear, the court has not found that Hales and Scarbrough were strangers to Techota's business or contractual relationships. Instead, the court finds that CP Home Care and the Pacrim Defendants have not upheld their heavy burden to establish fraudulent joinder based on their argument that Hales and Scarbrough could not be strangers to Techota's relationship with these patients because these patients were under the care of CP Home Care when the alleged interference occurred.

18

Defendants have not offered clear and convincing evidence that Techota has not suffered damages. Absent such a showing, the court cannot find fraudulent joinder. *See Henderson*, 454 F.3d at 1281.

"Construing the removal statute strictly, and resolving all doubts in favor of remand, as it is required to do," the court finds that Defendants CP Home Care, Pacrim AL, and Pacrim US "have not met their burden of showing there is *no possibility*" that Plaintiff will recover under its claims against Hales and Scarbrough. *Kuykendall & Assocs., L.L.C. v. Paulk's Moving & Storage of Mobile Inc.*, No. 08-741-KD-B, 2009 WL 650361, at *5 (S.D. Ala. Mar. 10, 2009) (emphasis in original); *see Crowe*, 113 F.3d at 1538 (explaining that defendants must upheld their "heavy burden of proof" in establishing fraudulent joinder). Therefore, complete diversity does not exist in this case, and this court does not have subject matter jurisdiction over this matter. This case is due to be remanded.

### III. Conclusion

For the reasons outlined above, the Motion to Strike First Amended Complaint (Doc. # 6) is due to be denied, but the Motion to Strike Affidavit of Veronica Wilkerson-Fountain (Doc. # 28) is due to be granted. In addition, the Motion to Remand (Doc. # 20) is due to be granted, and this case is due to be remanded to the Circuit Court of Tuscaloosa County, Alabama. A separate Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 30, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE